## SEAVY v. DEARBORN.

In an action against a sheriff for the act of his deputy, who has been released and has been admitted to testify on the trial, the father of the deputy may properly serve as a juror, not having been prejudiced in the cause.

Where a defendant, by his plea, admits the plaintiff's case, and sets up matter in avoidance, the burden of proof is with him, and he has the right to open and close.

A party, on a trial, may prove a fact that is material to his cause, although one of his witnesses may have denied it.

A witness, on cross-examination, shall not be asked as to a matter not pertinent to the issue, for the mere purpose of contradicting him by other evidence.

If one who has purchased a stock of goods in a shop occupied by the vendor, permit the sign of the vendor to remain over the door, that fact is evidence that the vendor remained in possession after the sale, and is so far evidence of fraud; but it is one which admits of explanation, and evidence that there was a custom or usage to permit signs to remain after such sales, is admissible.

A writing, made by a witness at the time of a transaction, for the purpose of stating truly its particulars, is evidence of what it contains, although the witness have forgotten the facts and circumstances.

If the absence of circumstances attending a sale of goods, from which the law presumes fraud, actual knowledge of the fraudulent intent of the vendor must be charged upon the purchaser, in order to avoid such sale in favor of creditors.

If A. wilfully mingle his goods with those of B., of the same kind, he cannot reclaim them without first pointing them out.

TRESPASS, brought against the defendant for taking and converting to his own use a stock of bonnets, ribbons, &c., the property of the plaintiff.

The defendant justified the taking, by pleading that one E. W. Hills was indebted before the time when, &c., to one Plympton, who sued out a writ of attachment against him, delivered it to G. W. Towle, a deputy of the defendant, who was sheriff of the county, and Towle attached the goods as the property of Hills, &c., and that the goods were Hills' property.

The plaintiff replied that the goods were the property of

the plaintiff, and not the property of Hills, and on this issue was joined.

At the trial, Joseph Towle, foreman of the jury, was objected to because he was the father of G. W. Towle, the deputy sheriff by whom the attachment was made, though it appeared that said deputy was released by the sheriff, and was a witness in the case.

The juror was examined, and stated that he had heard nothing of the case, and was sensible of no bias in regard to it, and the objection was overruled.

The court ruled that the defendant had the right to open the case, read the writ, pleadings, &c., the affirmative of the issue being on him.

The defendant called E. W. Hills as a witness, and afterwards called one Bigelow, to prove certain facts which Hills had denied. The plaintiff's counsel objected, but the court ruled that though the plaintiff could not impeach his own witness, he might show that he was incorrect as to particular facts. The defendant proposed to examine one R. Bassett, a witness called by the plaintiff, as to declarations made by Hills, and was not permitted. He then proposed to inquire of Bassett whether he had so testified at a former trial, for the purpose of contradicting him, and the court ruled that for that purpose merely the questions might be asked.

It appeared that after the sale of the goods by Hills to Seavy, under which the plaintiff claimed, a certain swinging sign, marked, " E. W. Hills, Bonnet Store," was suffered to remain over the door till the attachment was made, and the plaintiff offered to prove that it was usual, in this place and elsewhere, to suffer such signs to remain after sales had been made, but the court declined to admit the evidence, and instructed the jury that the continuance of such sign was a circumstance from which they had a right to infer fraud in the sale.

O. W. Penhallow, a notary public, was produced by the defendant, to prove that on the day on which the contract

Seavy *v.* Dearborn.

of sale was made by Hills to Seavy, the said Hills had a note becoming due, which was presented and protested on that day, and he testified that he had no recollection of the circumstances; but on being shown the original protest made by him, he testified that the protest was an original record of facts, which he knew at the time to be true, and the court permitted the protest to be read in evidence.

The court charged the jury that if any part of the motives of Hills, in making the sale of the goods to the plaintiff, was to secure to himself any thing more than the common and usual advantages of the sale, or to put his creditors at a disadvantage, or to give himself an advantage, by getting the control of the funds arising from the sale, to enable him better to settle with his creditors, or by putting his property out of the reach of legal process, to delay his creditors more than would result from his retaining the property in his hands, this design and purpose were fraudulent as to such creditors, and would vitiate the sale as to him, whatever other motives he might have had ; and that if the plaintiff knew such fraudulent purpose and motive of Hills, and assented to the sale with that knowledge, the sale was fraudulent and void as to him. That direct evidence of such knowledge was not required; that if the circumstances proved in the case were such, in the judgment of the jury, as would have led an observer of common intelligence in Seavy's situation to perceive and understand the fraudulent motives and design of Hills, that was enough to put him on inquiry, and to charge him with a knowledge of and participation in the fraud.

The court charged the jury that if they found the sale by Hills to be fraudulent, the defendant would not be liable for the value of any goods purchased by the plaintiff afterwards, of the same kind, mixed with and undistinguishable from those purchased of Hills, until they were distinctly pointed out to him, and he refused then to restore them.

A verdict was returned for the defendant. The plaintiff

moved for a new trial, on the exceptions arising on the fore-
going case, and it was ordered that the questions arising
thereon be reserved and assigned for the consideration of the
justices of this court.

*Hatch* and *Christie*, for the plaintiff.

*Emery* and *Bartlett*, for the defendant.

Woods, J.    Of the numerous points brought up by this
case, the first relates to the qualifications of a juror, objected
to by the plaintiff on account of his relationship to the dep-
uty for whose act the present action is pending against the
sheriff.    He was father of the deputy.    But the deputy him-
self had no interest in the event of the suit, having been re-
leased and admitted a witness on the trial.    It might, in-
deed, have been very naturally supposed that before that
release was executed, and while the deputy was liable to
the sheriff upon his bond, or while he was liable himself to
an action for the alleged trespass, a bias might have been
created in his mind, by conversations on the subject of the
controversy.    But such distinctly appears from his own an-
swers not to have been the fact, and it is difficult to im-
agine any ground for imputing to him any desire that the
cause should result one way any more than another.    He
was properly admitted to serve on the trial.    *Rollins* v.
*Ames*, 2 N. H. Rep. 349.

2.    The general rule that the party having the affirmative
of the issue, or the party on whom the burden of proof, in
the first instance, devolves, has the right to open and close
at the trial, is the one always referred to on questions of
this kind.    Its application, however, has not in all instances
been free from doubt and difficulty, and many cases are re-
ported, in which much discussion has arisen upon it.    But
in the case before us there is a rule which is decisive, and
which appears to be founded on good authority.    It is that

where the defendant, by his plea, admits the whole cause of action stated in the declaration, and undertakes to remove or defeat it by the new matter set up in his bar, he has the affirmative or the primary burden of proof, and is entitled to its benefits. " The cases," says *Parker*, C. J., in *Ayer* v. *Austin*, 6 Pick. 225, " have usually been trespass, where the defendant acknowledges the act, and claims in his plea the soil and freehold, in himself or some one under whom he acts as a servant—slander, in which a justification only is pleaded," &c. This seems to us a rational and just construction of the general rule, and the illustrations are apposite to our case. The only plea here was the special bar by which the defendant assumed to prove the new matter, and with the burden of that proof he takes its advantages. The ruling was accordingly correct.

3. The defendant was correctly permitted by the court to prove by one of his witnesses a fact which had been denied by another. This may well be done without impeaching the character of either, and is the only way by which the party may supply imperfections in the testimony of his witnesses, caused by want of memory, or a mistake of facts and circumstances. This right is wholly independent of the rule which precludes a party, ordinarily, from impeaching the veracity of a witness whom he has offered to sustain his cause. A party may show, in this way, that his own witness is mistaken in his relation of facts, although by a general rule he cannot be allowed to impeach him.

4. But what Hills said on a former trial, or otherwise, was not a proper subject of inquiry, and the judge who tried the cause, properly, at first, rejected the evidence offered to prove it. On that precise ground it ought not to have been admitted at all.

In the cross-examination of witnesses, a great deal of latitude is allowed for the purpose of testing the memory, the capacity or the honesty of the person under examination; and for that purpose inquiries may be pushed even to mat-

ters not positively material to the issue. But this license has various restrictions. In the first place, it does not extend so far as to authorize a party to prove, by a witness on cross-examination, things positively improper to be proved at all; and, secondly, he cannot, for the purpose of discrediting a witness, contradict, by other evidence, his statements that are improper or immaterial. In other words, he may, for the purposes before indicated, ask questions not strictly relevant to the issue, provided they do not tend to elicit testimony that is injurious or improper. But when a question of either kind has been put and answered, the party cannot introduce other evidence to contradict the witness, whether for the purpose of discrediting him, or for any other purpose. It is a very plain corollary to that rule, that a question not otherwise material or proper, does not become so by force of any purpose of the examining party to make use of it to discredit the witness, by contradicting his answers to it. The reason assigned by writers for these rules are, that a contrary course of proceeding would introduce issues in interminable numbers, and perplex and harass litigants in questions which do concern their cause.

A witness, therefore, shall not be interrogated on a subject not pertinent to the issue, for the mere purpose of contradicting him. If it was immaterial what Hills stated on a former occasion, it was still less " german to the matter " whether or not Bassett falsely testified to those irrelevant statements. The defendant had, therefore, no right to make the inquiry for such a purpose, and was improperly permitted to do so.

5. We think that the court correctly instructed the jury that the sign of E. W. Hills, remaining upon the store after the sale, was a circumstance from which the jury might infer a fraud in the transaction, because it certainly had a tendency, however slight, to indicate that the store continued in his occupancy and under his control, and that the possession of the goods remained in him. And possession of the

goods sold continuing with the vendor is one of the badges or evidences of fraud, which, left unexplained, have been held to fix the imputation of it upon the parties to the transaction. *Coburn* v. *Pickering*, 3 N. H. Rep. 415; *Clark* v. *Morse*, 10 N. H. Rep. 236. But such possession, after sale, is not such conclusive evidence of fraud as to exclude explanation, according to the authority of those cases. Still less should it be held that a fact which tends to prove such possession may not be explained, and its tendency repelled by other evidence throwing light upon the transaction. The plaintiff's sign remaining upon the shop was by no means conclusive proof that he was in possession of it, and it might have been accounted for in various ways. The plaintiff proposed to show that it was a common custom for the old sign, under such circumstances, to remain. If such were the fact, no false impression would have been likely to be given by the sign in question, and the evidence otherwise deducible from the fact would have been of little or no weight. We think the explanation offered by the plaintiff ought to have been received.

6. The testimony of O. W. Penhallow was clearly admissible within the rule established by practice in this State and recognized elsewhere. *Alvord* v. *Collin*, 20 Pick. 418; *Doe* v. *Parkins*, 3 Term Rep. 749; *State* v. *Batols*, 2 Nott & M'Cord, 331. An original memorandum or other writing made by a witness at the time of a transaction for the precise purpose of preserving the evidence of it in all its particulars, is better than the fading memory of man in most cases, and in very many the only full and accurate proof that the transactions are capable of. It has been admitted in cases in which the party making it in the ordinary transaction of business is, for sufficient cause, not produced as a witness, from the presumption that if produced he would testify in conformity with his memoranda. *Washington Bank* v. *Prescott*, 20 Pick. 339; *Welch* v. *Barrett*, 15 Mass. Rep. 380. It would be impossible to find better evi-

dence of the protest, than that which was admitted and be-came the subject of the exception. But the question was fully examined in *Haven* v. *Wendell*, 11 N. H. Rep. 112, and the doctrine settled in harmony with these views. The memorandum made at the time of the transaction for the purpose of stating it truly and circumstantially becomes evidence, having been first shown, by other proper proof, that it was so made.

7. The next question relates to the instructions of the court as to what intentions and purposes on the part of Hills in selling the goods to the plaintiff would constitute the sale a fraudulent one as to creditors, and what degree of suspicion and what means of and incentives to inquiry on the part of the plaintiff, would suffice to charge him as a participant in the fraudulent intentions of Hills.

The statute of 13 Eliz., to which the law on this subject is usually traced, renders void all conveyances, whether of real or personal property, made with the intent to disturb, hinder or defraud a creditor. And the language of the statute, and the decisions under it, make no distinction between conveyances for value and those which are merely voluntary, provided there be evidence by which this vicious purpose becomes exposed. Such was the doctrine of *Twyne's* case in the Reports; and the instructions of the court, that if the design of Hills in selling the goods, was to place his property out of the reach of legal process, and to delay his creditors more than they would have been delayed but for the sale, such a design was fraudulent, appears to have been clearly within the meaning of the statute and the decisions under it.

But it is plain that any such fraudulent purpose of the party conveying his property for a good and valuable consideration paid by the purchaser unsuspicious of his design, should not vitiate the sale. *Roberts* v. *Anderson*, 3 J. C. Rep. 377; *Hildreth* v. *Sands*, 14 Johns. 498. " Such a construction is not to be made in support of creditors as will

make third persons sufferers. Therefore the statute does not militate against any transaction *bona fide*, and where there is no imagination of fraud." Lord *Mansfield*, in *Cadogan* v. *Kennett*, Cowp. 434.

As to what participation of the purchaser in the illegal and fraudulent act and intent of the vendor shall involve him in the consequences of it, it is plain that a knowledge of such intent is sufficient. Lord *Mansfield*, in the case last cited, puts a case, where there had been a decree in the court of chancery, and a sequestration. A person, with knowledge of the decree, bought the house and goods belonging to the defendant, and gave a full price for them. The court said the purchase being with a *manifest* view to defeat the creditor, was fraudulent, and, therefore, notwithstanding a valuable consideration, void. So if a man knows of a judgment and execution, and with a view to defeat it, purchases the debtor's goods, it is void, because the purpose is iniquitous.

These remarks of Lord *Mansfield*, commonly cited in discussing this subject, embrace the rudiments of unquestionable doctrines. He who purchases with knowledge of the fraudulent design of the vendor to defeat and delay his creditors, is in law charged with participation in the fraud, though he pay a full consideration and take immediate and open possession of the goods. In the absence, therefore, of the various circumstances which raise the legal presumption of knowledge, the question is narrowed to this, whether, in point of fact, the plaintiff knew of the fraudulent intention of Hills in selling his goods.

The books contain many cases, both at law and in equity, and criminal as well as civil, turning upon this question of knowledge, and a great deal of disquisition may be found as to what amounts to sufficient notice of a fact to charge one with knowledge of it, or to estop him from denying such knowledge, whether, in fact, the notice have prevailed over his incredulity or not.

The general rule of equity is that notice sufficient to put a party upon inquiry is sufficient to charge him with what he might have learned by such inquiry. Fonb. Eq. B. 2, ch. 6, § 3. But the value of that rule as a guide is not great, because its application has been limited and qualified by so many decisions, that it has become unsafe to apply it without a precedent.

Besides, it is a rule for the court, and not for the jury; who should in this case have found, as a matter of fact, a fraudulent intention on the part of the plaintiff to collude with Hills against his creditors, in order to have founded a verdict for the defendant. Such knowledge of the purposes of Hills as should have fixed upon the plaintiff the imputation of such collusion, must therefore have been something beyond the *crassa negligentia*, and the knowledge that had become merely possible to a person having an interest to detect the truth ; and something beyond the suspicion that the facts, probably known to the plaintiff, would, in the opinion of a jury reviewing the transaction, have awakened in a common spectator. The question was not what would a common spectator know or suspect, but what knowledge had the plaintiff of Hills' purposes in making the sale, and what were his own purposes in making the purchase ? These were the appropriate questions for the consideration of the jury. The law does not charge the purchaser in such circumstances to inquire into the inducements of the vendor to sell, if the sale be free from secresy, inadequacy of price and the other tokens of fraud, which the *law itself* applies to settle the character of the transaction.

The true issue presented is the question of actual knowledge. The burden of proving it is on the party imputing the fraud. The evidence required is that which shall convince a jury that the party did know the unlawful purpose. This evidence may be found in the acts of the party himself, or from those extrinsic facts which must necessarily

Seavy *v.* Dearborn.

have indicated the truth so strongly as to raise in the minds of the jury a conviction that the plaintiff believed it.

The evidence required by the instructions given to the jury at the trial comes short of this. Instead of knowledge, they were required only to find such facts as would have led an observer of common intelligence to perceive and understand the motives of Hills; such facts being sufficient, according to the instructions, to have put the plaintiff upon inquiry, and to have charged him with knowledge. The effect of this language was to charge the plaintiff upon a mere constructive or implied knowledge of the fraud, and was therefore erroneous.

8. The instructions were correct upon the point last raised in the case. If the plaintiff fraudulently purchased the goods, he may properly be regarded as holding them for those who afterwards asserted their right to them as creditors, and as being subjected to the common rule regarding the confusion of goods. This rule is plainly stated in 2 Kent. Com. 264. If A. wilfully mingle his goods with those of B. so that it is impossible to distinguish between them, the whole belongs to B. And it belongs to the party causing the confusion to point out satisfactorily his own, or to lose them.

By reason of the several errors in the rulings and charge of the court of common pleas, the verdict must be set aside, and a

*New trial granted.*