RENA WARREN v. PILOT LIFE INSURANCE COMPANY, a CORPORATION.

(Filed 8 June, 1940.)

**1. Insurance § 41—Proof of death by violence, nothing else appearing, raises presumption that death resulted from accidental means.**

In an action on a provision of a policy providing double indemnity if death results by accident or accidental means, proof that death resulted from violence, whether offered by plaintiff or established by defendant's evidence, nothing else appearing, raises the presumption that death resulted from accidental means, and is sufficient to take the case to the jury, and places the burden of going forward with the evidence upon insurer, but when insurer goes forward with the evidence and, from all the evidence, the only reasonable inference is that insured's death resulted from injuries intentionally inflicted by another, it is proper for the court to instruct the jury that if it believes the evidence to answer the issue in insurer's favor.

**2. Trial § 27a—**

Where there is no conflict in the evidence, whether it is sufficient to prove the fact in issue is a question of law for the court, and when only one inference can be drawn therefrom, the court may properly charge the jury to answer the issue accordingly if they believe the evidence.

**3. Insurance § 41—Evidence held to entitle insurer to peremptory instruction that death did not result from accidental means.**

In this action on a double indemnity clause in a life insurance policy, plaintiff beneficiary introduced no evidence. Defendant insurer's evidence tended to show that insured and his fiancee were sitting in a parked automobile, that a man suddenly opened the door on her side of the car, grabbed her around the shoulders, that in his right hand he held a pistol diagonally in front of her face pointing toward insured, that she knocked the pistol up with her hand and that at that instant the gun fired, fatally injuring the insured, and that after inflicting the fatal wound and dragging the girl from the car he returned to the car and looked in, and then attempted to ravish her. *Held:* The only reasonable conclusion that can be drawn from the evidence is that insured's death resulted from injuries intentionally inflicted by another, and the evidence entitles defendant insurer to a peremptory instruction that if the jury believes the evidence to answer the issue as to whether the insured died as a result of accidental means in the negative.

**4. Same—Evidence that pistol was discharged at same instant the arm of the hand holding the pistol was struck is insufficient to show that blow caused the pistol to fire.**

Where a person strikes the arm of another who is holding a pistol pointed at insured, the fact that at the instant the blow is struck the pistol fires, inflicting fatal injury, does not prove that the blow caused the pistol to fire, and is no sufficient evidence that the death of insured resulted from an accident, since it leaves the question in mere specula-

23—217

tion and conjecture, it being a matter of common knowledge that a pistol is fired by pulling the trigger, and that ordinarily a blow will not cause a pistol to discharge.

**5. Evidence § 5—**

It is a matter of common knowledge that a pistol is discharged by pulling the trigger, and that ordinarily it is not discharged by a blow.

**6. Trial § 24—**

Where the substantive testimony is insufficient to be submitted to the jury upon the fact in issue, evidence competent only for the purpose of corroboration or contradiction, the substantive testimony cannot justify the submission of the issue to the jury.

**7. Appeal and Error § 49a—**

While decisions on former appeals constitute the law of the case, where the evidence upon the subsequent hearing is materially different from that upon the prior hearings, the former holdings that the evidence should be submitted to the jury are not controlling.

DEVIN, J., dissenting.

CLARKSON, J., concurs in dissent.

APPEAL by defendant from *Bone, J.,* at January Term, 1940, of PITT. New trial.

From judgment on verdict for plaintiff defendant appealed.

*Smith, Wharton & Hudgins and J. B. James for appellant.*
*Albion Dunn and H. Hannah, Jr., for appellee.*

BARNHILL, J. This is the same case reported in 212 N. C., 354, 193 S. E., 293, and 215 N. C., 402, 2 S. E. (2d), 17, where the material facts are set forth.

In actions such as this upon the provision of a policy of insurance against death by accident or accidental means, where unexplained death by violence is shown, nothing else appearing, without the existence of some presumption, the cause of death might be left in the field of speculation. Was the death caused by accidental means, or was it a case of suicide, or was it an intentional and unlawful killing? Under these circumstances the law presumes the lawful rather than the unlawful. Thus the rule arises that where an unexplained death by violence is shown, nothing else appearing, it is presumed that the death resulted from accidental means. When, however, there is evidence tending to explain the cause of death, it becomes a question of fact for the determination of the jury. On the issue thus raised, under the decisions of this Court on former appeals in this case, such decisions constitute the law of the case and we are bound thereby.

Even so, the question here presented is different from those discussed in the former opinions and the substance of the testimony of Miss

Phelps is material. It is more in detail than on the former trial and throws an entirely different light upon the occurrence.

She testified, in part, as follows: "The door on the car opened from the rear to the front. It was opened, and a man reached in with his left arm, placed it around my shoulders. I put this hand up and he grabbed it with his left hand; I put this hand up in front of me and he had a pistol in his hand, and when I put my hand up, as best as I remember, the gun went off. Alexander was bent over playing the radio this way (witness leaning), and as the door opened he shot. . . . I saw the pistol and knocked it up and at that instant the gun fired . . . the gun was in front of my face. I saw it and then my right hand went up. I don't remember whether that was done to protect myself."

In response to a question as to how the pistol was pointed the witness illustrated by the use of a pencil which was held diagonally in front of her face and pointed downwardly to her left. That was toward the deceased.

Conceding that when death by violence is shown, nothing else appearing, a defendant, who seeks to avoid liability on the grounds that the death resulted from bodily injuries inflicted intentionally by another, has the burden of going forward with evidence—that is, that evidence of death by external violence is sufficient to take the case to the jury, *Warren v. Ins. Co.,* 215 N. C., 402, 2 S. E. (2d), 17, something more than unexplained death by violence here appears.

There is no unqualified admission in the answer. Thus in the absence of evidence from the defendant, the plaintiff, without introduction of evidence, would not be entitled to judgment on the pleadings or to a directed verdict. And yet the judge held that the burden of going forward with the evidence rested upon the defendant without any evidence whatsoever from the plaintiff. She was not even required to offer so much of the admission in the answer as tended to show death by external violence. The defendant was thereby deprived of the right, at least, to cross-examine the principal witness heretofore relied upon by the plaintiff. Whether this constituted error we need not now decide, for the defendant elected to offer its evidence from which it appears that the death of the deceased was proximately caused by external violence.

The defendant, having proceeded with its proof as required by the court, then tendered its prayer for instructions. If all of the evidence offered by the defendant—the plaintiff having offered none—tends to explain the death by violence and to show that the death resulted from a wound intentionally inflicted by another, then as a matter of law, the defendant was entitled to have the court instruct the jury in accord with its prayer. Even though the evidence was such as to require the submission of an issue, whether the testimony offered, if believed and

accepted, is sufficient to prove a contested fact presents a question of law. *Spruill v. Ins. Co.,* 120 N. C., 141—in which there was a directed verdict as to suicide under a similar provision—*S. v. Prince,* 182 N. C., 788, 108 S. E., 330; *Reinhardt v. Ins. Co.,* 201 N. C., 785, 161 S. E., 528; McIntosh's P. & P., 632; *Peterson v. Sucro,* 101 Fed. (2d), 282, and cases there cited. The rule as approved by the cited and many other decisions is simply stated in McIntosh's P. & P., *supra,* as follows: "If the facts are admitted or established and only one inference can be drawn from them, the judge may draw the inference and so direct the jury."

Thus on this appeal we have presented the one question: Does the evidence offered by the defendant, if believed, establish an intentional killing?

The occurrences related by Miss Phelps were instantaneously contemporaneous. The door opened and a man caught her around her shoulders. She put her hand up and the pistol fired. As the door opened he shot. She knocked the pistol up and at that instant the gun fired. Thus, it appears that the door was opened, she was grabbed and the pistol fired at the same instant. When the pistol fired it was pointed diagonally in front and across her body, downward to the left where the deceased was sitting leaning over adjusting his radio. After inflicting a fatal wound upon the deceased and after dragging Miss Phelps from the car Tate then went back to the automobile and looked in, apparently for the sole purpose of discovering whether he had effectively eliminated resistance from that source. Having satisfied himself in that respect he proceeded in his efforts to ravish her.

There is only one reasonable inference to be drawn from this evidence. Tate, a man of diabolical heart, bent on mischief, for the purpose of criminally assaulting the woman and with the intent to remove any possible interference, deliberately incapacitated the man so that he might not come to her aid. As stated by *Devin, J.,* in *Warren v. Ins. Co., supra,* "Indeed all the evidence tends to show that his (Tate's) purpose with respect to her (Miss Phelps) was to assault her." That purpose Tate could not hope to accomplish without disabling, by violence, the deceased who was her companion and fiance. That this was his object is plainly demonstrated by the manner in which he threw open the automobile door, aimed his pistol at Miss Phelps' escort and threw his other arm around Miss Phelps. He wanted her alive and not dead. He wanted the man either dead or so incapacitated that he could not render her aid and assistance. He acted accordingly by deliberately shooting the man and then assaulting the woman.

The pointing of the pistol at the deceased constituted a misdemeanor and one who commits an unlawful act is presumed to intend the natural

consequence thereof and, upon the evidence on this record, eliminating consideration of the intent of Tate to commit a felony, he would be guilty of murder in the second degree even though he first pointed the pistol at Miss Phelps and it was so deflected when fired as to inflict a fatal wound on Warren.

Conceding that the presumption of intent does not apply in a civil action as against a third party, still the only reasonable inference to be drawn from this testimony leads irresistibly to the conclusion that Tate shot intentionally for the purpose of incapacitating the deceased. He had the pistol drawn, he was bent on an unlawful purpose which could be accomplished only when Miss Phelps was alive and only in the event that her companion was incapacitated. Can it be said with any degree of reason that the evidence shows other than that he intended to use the weapon to prevent resistance from or interference by her companion?

It is true there is evidence that Miss Phelps, in her struggle, threw up her hand and struck the pistol at the time it was pointed toward the deceased, but there is no evidence that in striking the pistol she either materially deflected it or caused it to discharge. Thus, this item of testimony does not contradict the other testimony, nor does it require a different conclusion.

It is argued, however, that this blow might have caused the pistol to fire. It is a matter of common knowledge that pistols are fired by pulling the trigger and that, ordinarily, a pistol will not explode from a blow. The one is the usual and expected. The other the unusual and exceptional. Certainly there is no evidence that this one could be fired in that manner.

The mere simultaneousness of the blow and of the discharge of the pistol does not prove, and is alone not evidence of, the one as the cause of the other. It is as reasonable to suppose that the discharge of the pistol caused the blow to be struck as it is to assume that the striking of the blow caused the murderer to fire the shot. It will be noted that Miss Phelps does not even say that "immediately" after she struck the blow the pistol fired. She says the blow and the shot were simultaneous. Accepting her precise statement, it negatives the idea that the blow caused the shot to be fired.

When we venture to assume that by striking the pistol in her struggle with Tate Miss Phelps caused it to fire we are venturing into a field of pure surmise and speculation which is unreal, unreasonable and unnatural. There is nothing in the evidence to warrant that conclusion. If we are to thus speculate it is as reasonable to conclude that when Tate saw the deceased leaning over and reaching toward the cowl of his automobile in adjusting his radio, he apprehended that the deceased was reaching for a weapon and then shot in order to kill him before he could do so.

"The sufficiency of the evidence in law to go to the jury does not depend upon the doctrine of chances. However confidently one in his own affairs may base his judgment on mere probability as to a proposition of fact and as a basis for the judgment of the court, he must adduce evidence of other than a majority of chances that the fact to be proved does exist. It must be more than sufficient for a mere guess and must be such as tends to actual proof." *S. v. Prince, supra.*

Accepting every syllable of Miss Phelps' statement as true, there is no evidence tending to show or permitting the inference of an accidental killing. To the contrary, all of the evidence, considered in the light most favorable to the plaintiff, tends to show that the deceased suffered death as the result of a gunshot wound intentionally inflicted by another. On the testimony in this record no other conclusion is sound but must rest upon conjecture unsupported by any reasonable inference to be drawn from the evidence. The prayer tendered by the defendant should have been given.

It is true that the record contains the evidence of the witness Whitehurst as to statements relating to the occurrence made to him by Miss Phelps. These statements are, in some respects, in conflict with the testimony of Miss Phelps and are more in line with her former testimony. But this is not substantive evidence. It was competent only for the purpose of corroboration or contradiction, and it could be considered by the jury only as it affected her credibility. Her testimony was the only substantive evidence upon which the jury was required to answer the issue. Under the instruction requested it was left for the jury to determine whether, in view of all the circumstances, they would accept and believe her statements.

Our position here cannot be considered in conflict with the prior opinions of this Court on former appeals in this case. In the first trial Miss Phelps testified: "The gun was pointed in my face and I pushed it out of the way like that, and a second later it fired." At the second trial she testified: "The first time I saw the gun it was pointed in my face and I pushed it out of the way like that, and a second later it fired." This Court was of the opinion that these statements were sufficient to support the inference that Tate assaulted Miss Phelps with a deadly weapon and, by reason of the fact that she pushed the pistol out of the way, the jury might be justified in finding that as to Warren the killing was accidental. Through her more detailed statement as to how the pistol was pointing and as to the manner and time of its firing it is made now to appear that the pistol was in fact pointed at the deceased and fired at the very instant she struck it. Therefore, on this appeal the evidence is substantially different from the testimony on the former appeals. The inferential holding on the former appeals that the evi-

dence did not justify a judgment of nonsuit or a directed verdict is, therefore, not the law of this case on this evidence.

New trial.

DEVIN, J., dissenting: I am constrained to take a different view of this case from that expressed in the majority opinion.

This is a Court of errors. Our appellate jurisdiction is limited to the review upon appeal of decision of the courts below upon matters of law or legal inference. Art. IV, sec. 8, Const. of N. C. This case has been thrice tried in the Superior Court. Three different juries, in trials presided over by three different judges, upon substantially the same testimony, have reached the same conclusion. If these verdicts were not in accord with our own views, nevertheless honest and intelligent jurors, in determining the facts from testimony of the witnesses before them, are as likely to be right as are the members of a court of review.

Twice new trials have been awarded by this Court for incidental errors discovered in the rulings of the trial judges. That the ultimate decision was for the jury was unquestioned.

This is the third appeal. The case was tried below, in conformity with the two decisions of this Court, and again the verdict of twelve good men and true was in favor of the plaintiff.

I am unable to discover any error of law in the trial.

Let us briefly review the history of this case as revealed by the records on appeal. Plaintiff instituted this action to recover upon a policy of insurance on the life of her son, the policy containing provision for double indemnity upon proof that insured sustained bodily injury resulting in death "through external, violent and accidental means." Defendant did not deny his death was caused by external and violent means, but alleged that the insured's death resulted from bodily injuries intentionally inflicted by another. In the first trial, in 1937, Judge Frank Daniels presiding, there was verdict for the plaintiff and judgment accordingly. Defendant's motion for judgment of nonsuit was denied. Defendant then requested peremptory instruction in its favor to the effect that if the jury found the facts to be as testified they would answer the determinative issue "Yes," that the death resulted from bodily injuries intentionally inflicted. Exception to refusal to nonsuit and to give this instruction were brought forward in defendant's assignments of error. Upon the consideration of the appeal here it was held by this Court, Winborne, J., speaking, that the burden rested "upon the defendant to prove facts bringing the case within that provision," that is, that the death resulted from bodily injuries intentionally inflicted by another. However, for error in charging the jury that the burden was on defendant to show another intentionally shot and killed the insured, instead of

saying that the burden was on the defendant to show that the death of insured resulted from bodily injuries intentionally inflicted by another, new trial was awarded.

The case was next tried with Judge Frizzelle presiding. He charged the jury, in respect to the burden of proof, in accord with the opinion of this Court on the former appeal. There was verdict and judgment for plaintiff, and defendant again appealed. The same exceptions as to burden of proof, nonsuit and peremptory instruction were again brought forward and were again considered on the second appeal. Thereupon this Court, after stating the rule set out in *Gorham v. Ins. Co.,* 214 N. C., 526, 200 S. E., 5, and *Life Ins. Co. v. Gamer,* 303 U. S., 161, with respect to the burden resting on defendant, used this language: "However, considering the pleadings in this case, we are not disposed to hold for error the instructions given by the court below, of which the defendant now complains. This was the view expressed by this Court in the former appeal which has thus become the law of the case." Error was found, however, in the admission of testimony of a witness that the person who fired the shot from which the death of insured resulted was a stranger to him. This being beyond the personal knowledge of the witness, was held incompetent. This was the only error discovered in the record.

In neither case did the Court question the right of the plaintiff to have her case passed on by a jury. The defendant's exceptions to the refusal of the trial judges to give the repeated requests for peremptory instruction were each time presented to this Court, and not sustained.

The third trial was before Bone, Judge presiding. Again the case was tried in exact accord with the previous decisions of this Court, with the same result. Again the jury, under instructions from the court to which no exception was noted, refused to find an intentional slaying within the meaning of the policy and defendant's pleading. In this trial the exceptions to the admission of testimony were without merit and were not argued here. There was no exception to the charge as given. The only exception argued was to the refusal of the court to peremptorily instruct the jury to answer the issue in favor of the defendant, that is, that the death of insured was due to injuries intentionally inflicted.

The majority opinion does not question the rule that the previous decisions of the Court constitute the law of the case, equally binding on the trial judge and this Court. But it is said the evidence is different this time. Let us examine that more closely. In all three trials the testimony of the same witness was offered, that of Miss Phelps. To my mind there is no material difference between her testimony this time and what she said on former trials. Here is what she said in the last

trial: "When the door opened I was seated against the right door. I didn't know anyone was there until the door opened. The door on the car opened from the rear to the front. It was opened and a man reached in with his left arm, placed it around my shoulder. I put this hand (left) up and he grabbed it with his left hand. I put this hand (right) up in front of me and he had a pistol in his hand, and when I put my hand up, as best I remember, the gun went off. Alexander (the insured) was bent over playing the radio this way (witness leaning), and as the door opened he was shot. When he fired the gun it fired just the one time. I saw the pistol and knocked it up, and then that instant the gun fired. The door opened and a man stood in the door and put his left arm around me and held my left hand. The gun was in front of my face. I saw it and then my right hand went up."

But that was not all the evidence. The defendant Insurance Company also offered the testimony of S. A. Whitehurst: "She (Miss Phelps) said that the pistol was in front of her face and the door came open. In other words, she hit it and knocked it from in front of her face, and the assailant grabbed her, and the moment he grabbed her the pistol fired. She knocked the gun up, and in other words she didn't know when it came down—that they were in a tussle then and he was trying to drag her out of the car. She said she struck his arm. She said she knocked the gun up the first instant he grabbed her and then they went into a tussle. Apparently, from what she told me, she and the assailant were in a tussle and I understood that about that time the gun fired. I don't know that the instant she threw up her arm and knocked it up the gun fired, but that they were in a tussle when the gun fired."

I submit that this evidence is not conclusive of the intentional slaying of the deceased. In all the former considerations given by the Court to this testimony, no such conclusion was reached, else the case had been disposed of on the first appeal. "There is only one reasonable inference to be drawn from this evidence," says the learned writer of the majority opinion. But three juries who heard it found differently. To my mind this evidence warrants the inference that Willie Tate had no intention of shooting Alexander Warren. Plainly his purpose was to assault the young lady. In order to do so the evidence is consistent with the view that he may have intended to "hold up" the young man at the point of a pistol, or to overawe both with the display of a weapon. That was the reported method employed by rapists in other parts of the State whose crimes had been widely published.

But in this case Willie Tate met violent resistance from the young lady. When he put his arm around her to pull her out of the car and presented the pistol in front of her face, she fought back. "They were in a tussle, and he was trying to drag her out of the car." The pistol

was in front of her face. She knocked it up. The pistol fired and Warren was killed. What kind of pistol was used does not appear.

Notwithstanding this evidence would make out against Willie Tate a case of murder, as a homicide committed in the attempt to perpetrate a felony, at the same time it would not necessarily defeat recovery on an insurance policy issued to insure against death by external, violent and accidental means. It is a possible and not unreasonable inference from this evidence that the striking of the assailant's arm caused the pistol to be discharged, or it was discharged in the course of the "tussle" between him and his intended victim. Who knows? But the burden was on the defendant to show that the bodily injuries to Warren were intentionally inflicted. The jury took the view that the defendant had failed to do so, and answered the issue against it, under correct instructions from the trial judge.

Under this evidence and with the previous decisions of this Court before him, what else could Judge Bone have done than to try the case as he has done? To my mind, after careful study, the trial was free from error of law and should be affirmed.

CLARKSON, J., concurs in this opinion.