## MITCHELL v. NEW ENGLAND MUT. LIFE INS. CO.

### No. 4768.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1941.

W. R. Broaddus, Jr., of Martinsville, Va. (John W. Carter, Jr., of Danville, Va., and William M. Mitchell, of Bassett, Va., on the brief), for appellant.

John L. Walker, of Roanoke, Va. (Woods, Chitwood, Coxe, Rogers & Muse, of Roanoke, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This action was instituted in the court below for recovery on two life insurance policies aggregating $15,000, with provision for double indemnity in case of accidental death. The defense was based on the suicide of the insured. Judgment on the pleadings for the face of the policies, on the theory that the suicide clause therein contained was void because of failure to comply with the Virginia statute relating to that subject, was reversed by this court in New England Mut. Life Ins. Co. v. Mitchell, 4 Cir. 118 F.2d 414. Subsequent to the entry of that judgment in the court below, and while appeal therefrom was pending, the issue as to the liability of the company under the double indemnity provision of the policies was tried; and from verdict and judgment thereon in favor of defendant the plaintiff has appealed, complaining of the refusal of the lower court to give requested instructions on the presumption against suicide. The defendant contends that this matter was sufficiently covered by the charge and that, at all events, any error with respect thereto was harmless, since the evidence established suicide so conclusively that its motion for directed verdict on that ground should have been granted.

We agree with defendant that the evidence as to suicide is so conclusive as to require a directed verdict on that ground and to render harmless any possible error in the refusal of the instructions prayed. The evidence shows that the insured was financially embarrassed. The corporation through which he was doing business and in which he owned the majority of the stock was hopelessly insolvent, and he had been giving post dated checks without funds in bank to meet them. About a week before his death he made inquiry of an insurance agent as to whether other insurance policies were incontestable, and, upon the agent volunteering that the policies here involved carried a two-year suicide clause, stated that the period thereof had been changed to one year, a period which had expired more than a month before the conversation. Insured spent the night preceding his death away from home, which was an unusual circumstance and

was unexplained. On the morning of his death, he called at the home of his mother and borrowed from his younger brother a small 410 bore shotgun with the statement that he wished to go squirrel hunting, although the hunting season had not then opened. Some hours later he was found lying near his abandoned automobile seven miles distant from his mother's home. He was shot through the heart and the gun which he had borrowed was lying beside him with an empty shell in it. There is no contention and no ground for contention that anyone else shot him; and the nature of the wound itself bars any reasonable hypothesis of accident. The load of shot which caused his death entered the chest midway between the left nipple and the breast bone. It made a small hole like that of a rifle bullet with a narrow powder burn or ring around it,· and with no hole through or powder burns on his coat, shirt or undershirt, showing that the muzzle of the gun must have been pressed against the naked skin of his breast at the time. The bullet went straight in, showing that the gun must have been held at right angles to his breast. The barrel of the gun was short and the evidence shows that insured could easily have held the muzzle against his breast and shot himself by pulling the trigger; and, from the nature of the wound, it is inconceivable that it could have been inflicted in any other way.

Plaintiff's theory that the gun went off accidentally while insured was hunting squirrels has nothing to support it. Insured was found within 75 yards of where he had left his automobile. He had made no preparation for hunting, did not have on hunting clothes and had only three shells including the one that was shot. The gun had a trigger guard and a more than ordinarily heavy trigger pull, and it was practically impossible to fire it without pulling the trigger, except by a blow of sufficient force to break the firing mechanism. This mechanism was not broken and there was nothing to indicate that the trigger could have been pulled except by the insured himself. Furthermore, no possible theory of accidental discharge could account for the position of the muzzle of the gun against the naked skin, with the clothing pulled aside and the gun itself held at such an angle as to fire the load straight into the heart. The evidence that insured frequently went with his tie off and his shirt unbuttoned at the neck was not sufficient to account even for the fact that the clothing was not penetrated. The shirt and undershirt were manifestly pulled aside to permit the proper placing of the gun; for, when the body of insured was found, these had to be pulled aside for the wound to be discovered.

Under such circumstances reasonable men could have reached no other conclusion than that insured shot himself intentionally; and defendant was entitled to a directed verdict to that effect. Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir. 79 F.2d 724, 103 A.L.R. 171; Home Life Ins. Co. v. Moon, 4 Cir. 110 F.2d 184; Mutual Ins. Co. of Richmond v. Marshall, 157 Va. 427, 161 S.E. 61; Gorham v. Mutual Benefit Health & Accident Association, 4 Cir. 114 F.2d 97, 100. As we said in the case last cited: "A suicide case should be tried like any other case, and metaphysical reasoning about presumptions and burden of proof should not be permitted to obscure the real issue, as has been done in so many cases. If the evidence is conflicting, or if different inferences can reasonably be drawn from it, the case is for the jury. If, however, the evidence is so clear as to leave no room to doubt what the fact is, the question is one of law, and it is the right and duty of the judge to direct a verdict."

And we do not think that error can be predicated of the refusal to give the instructions requested. Both of these instructions placed the burden of establishing accidental death upon plaintiff, as it was placed by the charge. This was correct, since the matter being tried was liability, not for the face of the policy, but for accidental death under the double indemnity feature thereof. (For difference in application of the rule respecting the burden of proof in such cases, see opinion of this Court in the Clemmer case, supra.) Instruction A contained in addition the following statement as to the presumption against suicide: "When it has been established that the said Kit C. Koger's death resulted from a physical injury sustained by him and there is no proof which clearly establishes the nature of the cause thereof a presumption arises that it resulted from accident rather than it was self-inflicted by way of an attempt at suicide." Instruction B, offered as an alternative, contained the following: "Upon the fact of violent death without more, the presumption of law requires the inference of death by accident

rather than by suicide, but if there has been introduced before you evidence sufficient to sustain the finding that the death was not due to accident, there is no foundation of fact for the application of such presumption and it disappears from the case, the jury then being required to consider all admitted and proved facts and circumstances and to determine from the evidence and the evidence alone whether or not the said Koger's death was accidental and in reaching this decision should take into account the probabilities found from the evidence to attend the claims of the respective parties. The presumption against suicide is not evidence at all but is a rule of law which in a case of this kind required the conclusion in the evidence of an unexplained death by violent injury that the death was not suicidal until credible evidence of self destruction is offered. When and if such evidence is offered whether it be in the course of the plaintiff's proof or by the defendant the presumption as a rule of law disappears from the case. When unexplained death by violence is shown a defendant who seeks to avoid liability on the ground of suicide has the burden of going forward with the evidence or the issue of suicide will go against him, but if he offers credible evidence which tends to support the theory of suicide, the burden of persuading the jury that death resulted from accident independent of suicide and all other causes remains with the plaintiff. However, when the case goes to the jury they are at liberty to take into consideration the abnormality of suicide and to give such probative force to such abnormality as their judgment dictates. In other words you are charged that at the beginning of this case the presumption of law was that Kit C. Koger died as a result of accident and not of suicide. Unless you believe that credible evidence has been introduced either by the plaintiff or the defendant that at last tends to prove suicide then that presumption still prevails and your verdict should be for the plaintiff in the sum of $15,000.00 with or without interest as you may determine. If, however, you are of the opinion that credible evidence has been introduced that tends to show suicide then the presumption of law referred to disappears and you should weigh all the evidence, consider its credibility and effect and finally upon the whole evidence determine whether death by accident has occurred bearing in mind that if the evidence leaves you in such doubt that you are unable to decide the point, then your verdict should be for the defendant."

It will be noted that instruction B is based upon language used by this court in the Clemmer case, supra. It does not follow, however, that refusal of such instruction should be held for error. On the contrary, we made it clear in the Clemmer case that the presumption against suicide need not ordinarily be mentioned as such in the charge because of the tendency of the use of technical language to confuse the jury. The rule to be followed by the trial judge, with the reason therefor, was thus stated by Judge Soper, speaking for the Court [79 F.2d 730, 103 A.L.R. 171]: "Ordinarily, it is not necessary to refer to the presumption against suicide in the charge to the jury. If the basic fact of death by violence is admitted, or proved, the presumption arises, and in the absence of countervailing evidence, the judge should direct a verdict for the plaintiff. If such evidence is produced, the judge should charge the jury in the usual fashion. He may of course refer in his discretion to the improbability of suicide as an inference of fact, based on the common experience of mankind, but the jury should be permitted to give the inference such weight as it deems best, undisturbed by the thought that the inference has some sort of artificial probative force which must influence their deliberation. Likewise as to the opposing evidence, the jury should be instructed to weigh its credibility and effect in the usual way, and finally, upon the whole evidence, to determine whether death by accident has occurred, bearing in mind that if the evidence leaves their minds, in such doubt that they are unable to decide the point, the verdict should be against the party upon whom the burden of persuasion rests. Such a charge can be easily understood and enables the jury to do justice to both sides. But when the court goes further and introduces the presumption itself as evidence to be considered by the jury, or places the burden on the defendant to satisfy the jury by a preponderance of evidence, he states the principle too strongly and may cause a miscarriage of justice; and a fortiori, when he imports into the trial the rule of reasonable doubt applicable in prosecutions for crime, he makes it well-nigh impossible for the jury to find for the defendant. The result has been in

many cases of self-destruction to be found in the books, that judge and jury alike have been unable to take a common-sense view of the facts of life, and have seemed to be the only persons in the community who did not clearly understand what had taken place."

We think that the trial judge clearly and succinctly presented the issue of the case in his charge, wherein he said: "The basis of the plaintiff's action here is accidental death, which he has alleged, and introduced evidence tending to prove, and relies on the generally known fact that men do not ordinarily kill themselves. The defendant has alleged that the death of Kit C. Koger was not accidental, but that he came to his death by suicide, and has introduced evidence tending to prove that. I charge you that under the law applicable to this case, the burden of proving the accidental death of Kit C. Koger by a preponderance of the evidence is upon the plaintiff. Therefore, if you believe from a preponderance of the evidence that said Kit C. Koger died as the result of an accident, you should find for the plaintiff. On the other hand, if you believe from a preponderance of the evidence that Kit C. Koger died by his own intentional act, you should find for the defendant. And further, since the burden of proof is on the plaintiff, if you are unable to determine to your own satisfaction upon the evidence which you have heard whether the death was accidental or resulted from some other cause, you should find for the defendant."

 Even if Virginia law is to be followed in charging on the presumption against suicide, as to which we need express no opinion, we do not see how error can be predicated of the refusal of the instructions. The charge clearly calls the attention of the jury to "the generally known fact that men do not ordinarily kill themselves" which, apart from rules as to the burden of proof, is all that the presumption against suicide means when expressed in plain language. 1 Greenleaf on Evidence par. 44; Wigmore on Evidence, 2d ed., vol. 5 p. 451; Watkins v. Prudential Insurance Co., 315 Pa. 497, 173 A. 644, 95 A.L.R. 869, 872, 873. Plaintiff may not complain of the failure to charge that the burden of proof was on defendant to establish suicide, for the all-sufficient reason that he requested the court to charge that the burden was on the plaintiff; and in Virginia the burden of persuasion,

as distinguished from the burden of going forward with the evidence, never shifts. Darden v. Murphy, 176 Va. 511, 11 S.E.2d 579, 581.

Interesting questions have been raised before us as to what extent the federal courts are required to follow the law as applied by state trial courts and as to whether in applying presumptions relating to proof on trial, as distinguished from presumptions relating to substantive rights, the federal courts must follow state practice. We find it unnecessary to decide any of these questions on the record before us. Whatever law be applicable, we find no error in refusing the instructions prayed, in the light of the charge given; and, even if error could be predicated of such refusal, it was necessarily harmless, since the defendant was entitled to a directed verdict upon the evidence.

The judgment appealed from will accordingly be affirmed.

Affirmed.