ROSA M. BARNES v. HOME BENEFICIAL LIFE INSURANCE COMPANY.

(Filed 24 July, 1967.)

**1. Insurance §§ 26, 34—**
Plaintiff beneficiary has the burden of showing that the death of the insured resulted from accident or accidental means within the language of the policy sued on.

**2. Same—**
When the evidence of the beneficiary tends to show that the insured died by unexplained and external violence not wholly inconsistent with

an accident, the presumption arises that death was accidental, since the law will not presume that the injuries were inflicted intentionally by the deceased or some other person.

**3. Same—**

Evidence of plaintiff beneficiary to the effect that the insured was found, still alive, between the rails and under the cars of a train, with his right leg severed, his left leg broken, and cuts and bruises about the body, and that his death occurred some thirty minutes after the discovery, *held* sufficient to be submitted to the jury on the issue of whether insured's death was the result of accident or accidental means.

APPEAL by plaintiff from *Cowper, J.,* October 1966 Civil Session of HALIFAX.

Plaintiff is the beneficiary named in two policies of insurance issued by defendant on 23 January 1961 to her son, Horace R. Moseley, whose age was then 29. Insured died on 12 June 1965 at the age of 33. Policy No. 61047640 insured Moseley's life for $1,000.00. It provided for double indemnity if the insured, prior to attaining age 60, sustained bodily injury solely through external, violent, and accidental means which, directly and independently of all other causes, resulted in his death within ninety days. If, however, death was caused directly or indirectly from disease, alcoholism, violence intentionally inflicted by another person (robbery excepted), or from suicide, no additional benefit is payable.

In Policy No. 61047641, defendant agreed to pay Moseley's beneficiary the principal sum of $1,000.00 if, within 90 days of bodily injury effected solely by violent, external and accidental means as evidenced by a visible contusion or wound on the exterior of the body, his death was directly, independently, and proximately caused by such injury prior to age 64. Each year the policy was in force, the insurance increased $100.00. This accident policy, like the life-insurance policy, excluded coverage for death from suicide, violence intentionally inflicted by another person, or death resulting directly or indirectly from disease, alcoholism, bodily or mental infirmity, sunstroke, poison, infection, gas inhalations, or insured's committing or attempting to commit an assault or felony.

Defendant admits the execution and delivery of both policies of insurance, the payment of all premiums due, and the death of the insured. It has paid plaintiff $1,000.00 under Policy No. 61047640 but declines to pay the accidental death benefit on the ground that "the circumstances under which insured's death occurred were such as to make his death an excluded risk under the provisions of said policies." Upon the same ground, it denies any liability on Policy No. 61047641. Plaintiff brought this action to recover the sum of $1,000.00 upon the double indemnity provision of the life insurance

policy, and the sum of $1,400.00, the amount of coverage provided by the accident insurance policy at the time of insured's death.

At the trial, plaintiff's evidence tended to show: About 11:28 p.m. on 12 June 1965, D. N. Beale, a police officer, went to the place where the tracks of the Seaboard Air Line Railroad cross Virginia Avenue in the city of Roanoke Rapids. He found the crossing blocked by a train of 6-7 cars. A man had been run over. His body was between the rails and still under the cars, which had not been disconnected from the train. When the cars were uncoupled, the officer recognized the man as the insured, Moseley, whom he knew. His right leg had been severed about the middle of the calf; his left leg was broken; he had cuts on the head and bruises about the body. Moseley was still alive and "did not appear to be bleeding so much." When the officer saw him thirty minutes later at the hospital, however, he was dead.

At the conclusion of plaintiff's evidence, the court granted defendant's motion for judgment of involuntary nonsuit. From judgment dismissing the action, plaintiff appeals.

*Allsbrook, Benton, Knott, Allsbrook & Cranford for plaintiff appellant.*

*Crew and Moseley for defendant appellee.*

SHARP, J. In insurance policies which provide for payment, not merely for death, but death by accident or by external, violent, and accidental means, the authorities support the general rule that the burden is on the plaintiff to show that the death of insured resulted from accident or accidental means within the terms of the policy. *Chesson v. Insurance Co.*, 268 N.C. 98, 150 S.E. 2d 40; *Horn v. Insurance Co.*, 265 N.C. 157, 143 S.E. 2d 70; 29A Am. Jur., Insurance §§ 1852, 1957 (1960); 46 C.J.S., Insurance § 1317(2) (1946); Annot., 12 A.L.R. 2d 1264, 1268-69 (1950); Annot., 144 A.L.R. 1416, 1422 (1943); Annot., 26 A.L.R. 2d 388, 436 (1952); see also *Warren v. Insurance Co.*, 215 N.C. 402, 2 S.E. 2d 17, and *Gorham v. Insurance Co.*, 214 N.C. 526, 200 S.E. 5. Suicide (at least, by a sane insured), or any other non-accidental act, even though not specifically excluded from the coverage of such policies, "is not in reality an exception to the general risk which is covered, but a definitive limitation of the covered risk itself." Annot., 142 A.L.R. 742, 743 (1943).

Notwithstanding, the great weight of authority supports the rule that where the beneficiary offers evidence tending to establish that the insured met his death by unexplained external violence, which is not wholly inconsistent with accident, the presumption arises that the means were accidental, "since the law will not presume that the

injuries were inflicted intentionally by the deceased or by some other person." 29A Am. Jur., Insurance § 1852 (1960). *Accord*, 46 C.J.S., Insurance § 1317(2) (1946); Annot., Proof of death or injury from external and violent means as supporting presumption or inference of death by accidental means within policy of insurance, 12 A.L.R. 2d 1264 (1950) (where the cases are collected).

The reason for the presumption was pointed out by Barnhill, J. (later C.J.), in *Warren v. Insurance Co.*, 217 N.C. 705, 706, 9 S.E. 2d 479, 480 (a case in which the question was whether a third person intentionally shot deceased):

> "In actions such as this upon the provision of a policy of insurance against death by accident or accidental means, where unexplained death by violence is shown, nothing else appearing, without the existence of some presumption, the cause of death might be left in the field of speculation. Was the death caused by accidental means, or was it a case of suicide, or was it an intentional and unlawful killing? Under these circumstances the law presumes the lawful rather than the unlawful. Thus the rule arises that where an unexplained death by violence is shown, nothing else appearing, it is presumed that the death resulted from accidental means."

Indisputably, the insured in this case met his death by unexplained, violent, and external means. From the evidence, we know that a train ran over him shortly after 11:00 p.m., but we do not know why he happened to be on the track at the time. *Inter alia*, the explanation could be suicide, murder, alcoholism, or a heart attack — any one of which would exclude coverage —, but there is no evidence to establish any of these; so the explanation could also be accident, which is within the policies' coverage.

In discussing the application of the presumption against suicide to suits on insurance policies, Stansbury, N. C. Evidence § 224 (2d Ed., 1963) states the rule applicable to the facts of this case:

> "(W)here the policy insures only against accident or provides double indemnity for accidental death . . . plaintiff beneficiary must prove the accidental character of the death by the greater weight of evidence, but when he shows the unexplained violent death of the insured he has at least made out a *prima facie* case of accident authorizing a finding in his favor on that issue. This does not shift the burden of the issue to the defendant."

Having "at least made out a *prima facie* case of accident," plaintiff was entitled to have the jury say whether insured's death was cov-

ered by the policies. In a suit such as this, it is only when the plaintiff's evidence negates the possibility of death by external, violent, and accidental means that nonsuit is proper at the close of plaintiff's evidence. *Slaughter v. Insurance Co.*, 250 N.C. 265, 108 S.E. 2d 438; *Goldberg v. Insurance Co.*, 248 N.C. 86, 102 S.E. 2d 521.

Reversed.