MAXINE V. MOORE, AS EXECUTRIX OF THE ESTATE OF ALLAN PRATT MOORE, AND MAXINE V. MOORE, INDIVIDUALLY v. UNION FIDELITY LIFE INSURANCE COMPANY

No. 76

(Filed 12 June 1979)                        .

1. **Insurance § 67— action on policy covering death by "accidental bodily injury" —showing of unexplained, violent death by external means—presumption of accident**

When the plaintiff in an action to recover death benefits under a policy insuring against loss of life due to "accidental bodily injury" makes a showing of unexplained, violent death by external means which is not wholly inconsistent with accident, the presumption arises that the means were accidental and the following rules apply: (1) the effect of this presumption is to place on defendant the burden of going forward with evidence; (2) if there is no evidence tending to show that death was non-accidental, the jury should be peremptorily instructed that if it finds an unexplained, violent death by external means, it should find that the death was accidental; (3) if evidence of non-accidental death is presented, then the presumption *per se* no longer applies, and the question of accidental death is one for the jury, but it is still permissible for the jury to infer from the circumstances that the death was accidental, and it is proper for the judge to so instruct; and (4) in no event does the presumption operate to relieve the plaintiff of the burden of persuasion on the issue of accidental death.

2. Insurance § 67.2— action on accident policy—sufficiency of showing of unexplained, violent death by external means

      In an action to recover death benefits under a policy insuring plaintiff's husband against loss of life due to "accidental bodily injury," plaintiff's evidence was sufficient to show an unexplained, violent death by external means not wholly inconsistent with accident, and plaintiff was entitled to the presumption that the means were accidental, where it tended to show that plaintiff's husband was found dead with a gunshot wound to his head and a pistol by his side; the gunshot wound was just over the right eye, and it was surrounded by powder burns; and there were no signs of a struggle or that anyone else had been around, since this evidence, while sufficient to support a verdict of suicide, was not wholly inconsistent with an accidental discharge of the pistol.

3. Insurance § 67.2— action on accident policy—permissible inference of suicide or accident—no directed verdict against plaintiff

      In an action to recover death benefits under a policy which insured plaintiff's husband against loss of life due to "accidental bodily injury" and which excluded coverage for death by suicide, the trial court erred in directing a verdict against plaintiff where plaintiff's evidence did not establish conclusively that her husband died by suicide but would also permit an inference of accident from her showing of an unexplained, violent death by external means.

      .  Justices BRITT and BROCK did not participate in the consideration or decision of this case.

      Justice COPELAND dissenting.

DEFENDANT appeals pursuant to G.S. 7A-30(2) from a decision of the Court of Appeals, opinion by *Judge Robert Martin* with Chief Judge, now Justice, *Brock* concurring and *Judge Clark* dissenting, reversing a directed verdict in its favor granted by *Judge Clifford* at the 13 September 1976 Session of FORSYTH District Court. The decision below was reported at 35 N.C. App. 69, 239 S.E. 2d 859. The case was docketed and argued as No. 52 at the Spring Term 1978.

    *Moore & Keith, by Thomas J. Keith, Attorneys for plaintiff appellee.*

    *Hudson, Petree, Stockton, Stockton & Robinson, by James H. Kelly, Jr., and Gray Wilson, Attorneys for defendant appellant.*

EXUM, Justice.

    This is an action for death benefits under a policy issued by defendant insuring plaintiff's husband against loss of life due to

"accidental bodily injury." The trial court granted defendant's motion for a directed verdict at the close of all the evidence. The Court of Appeals held that it was error to direct a verdict against plaintiff and ordered a new trial. On the second issue raised on appeal, the Court of Appeals upheld the trial court's ruling that the principal sum payable under the policy was $5000. We affirm in both respects.

Plaintiff's evidence showed that her deceased husband, Allan Pratt Moore, was a retired truck driver. He and his wife together had a sufficient income, and he had no particular financial worries. He had been hospitalized in mental institutions at least three times, the last time as an outpatient for a period of approximately a month and a half beginning in June, 1973. Mrs. Moore testified that her husband would on occasion get into a "manic" state, characterized by his being "keyed up," engaging in excessive buying and selling and never resting. He did not, however, appear "depressive or moody or gloomy." Mr. Moore was on medication — Lithium and coumadin — after his last hospitalization.

Mr. Moore left home on the morning of Friday, 14 September 1973, to go to Hillsville, Virginia, to arrange for an auction sale. His death apparently occurred that night. His body was found the next morning. He was lying in front of his car just off an unpaved road or path on a farm he owned near Hillsville. The cause of his death was a gunshot wound to the forehead, just over his right eye. There were powder burns surrounding the wound. Mr. Moore's clothing was not disturbed. There were no signs of a struggle or that anyone else had been around. At or near his right foot was a .32 caliber pistol. He was proficient with firearms and usually carried a gun, although Mrs. Moore did not recognize the gun found by his side.

Defendant's evidence agreed in most essential respects with plaintiff's, but it showed in addition that the keys to Mr. Moore's car were still in the ignition and that found on his person, among other things, were his watch, his ring, his wallet and $92.24 in cash. Edwin E. Bolt, testifying for defendant, stated that he recognized the pistol found at the scene as belonging to Mr. Moore. Dr. Joseph H. Early estimated the time of death as 10:00 p.m. on 14 September 1973. He also stated that in his opinion the "weapon was within two inches of the skull" when it was fired.

· At the time of his death, Mr. Moore was insured against death "resulting directly and independently of all other causes from accidental bodily injury" under a policy issued by defendant. Excepted from coverage under this policy is death caused "by suicide or any attempt thereat (sane or insane)." Plaintiff filed a claim to collect $10,000 in accordance with what she alleges are the terms of the policy. After defendant refused payment, she brought this action both in her capacity as executrix of her husband's estate and as beneficiary under the policy. Defendant contends that Mr. Moore died as a result of suicide and that it is consequently not liable under the policy. In any event, defendant denies liability for a sum in excess of $5000.

At the close of plaintiff's evidence at trial, the court ruled that the principal sum payable under the policy was $5000. At the same time, the court reserved ruling on defendant's motion for directed verdict. Defendant presented evidence and then renewed its motion, which was granted.

Plaintiff here had the burden of showing that her husband died as a result of accidental bodily injury within the meaning of the policy issued by defendant. *Barnes v. Insurance Co.*, 271 N.C. 217, 155 S.E. 2d 492 (1967). The evidence available here on that issue, as in many other cases of this nature, was essentially circumstantial.[1] Plaintiff was able to offer testimony as to the disposition and mental condition of her husband, his financial situation, and the fact that he was found dead with a gunshot wound to his head and a pistol by his side.

Cases of this nature, *i.e.*, in which the deceased is found dead with no clear indication of the manner of his death, have long troubled the courts. Both the problem and the generally accepted solution were stated by Justice, later Chief Justice, Barnhill in *Warren v. Insurance Co.*, 217 N.C. 705, 706, 9 S.E. 2d 479, 480 (1940):

> "In actions such as this upon the provision of a policy of insurance against death by accident or accidental means, where unexplained death by violence is shown, nothing else

---

1. For a sampling of other cases involving similar circumstances and the proof available to a plaintiff seeking to make out a prima facie case of accidental death, *see Barnes v. Insurance Co., supra* (deceased found run over by train); *Dick v. New York Life Ins. Co.*, 359 U.S. 437 (1959) (deceased found shot); *Life and Casualty Ins. Co. v. Daniel*, 209 Va. 332, 163 S.E. 2d 577 (1968) (deceased found drowned).

> appearing, without the existence of some presumption, the
> cause of death might be left in the field of speculation. Was
> the death caused by accidental means, or was it a case of
> suicide, or was it an intentional and unlawful killing? Under
> these circumstances the law presumes the lawful rather than
> the unlawful. Thus the rule arises that where an unexplained
> death by violence is shown, nothing else appearing, it is
> presumed that the death resulted from accidental means."

In other words, when a beneficiary under an accidental death in-
surance policy "offers evidence tending to establish that the in-
sured met his death by unexplained external violence, which is
not wholly inconsistent with accident, the presumption arises that
the means were accidental." *Barnes v. Insurance Co., supra,* 271
N.C. at 219, 155 S.E. 2d at 494.

The effect of this presumption has not been entirely clear,
due in no small part to difficulties inherent in the use of the word
"presumption" itself. As Justice Britt recently summarized the
problem in *Henderson Co. v. Osteen,* 297 N.C. 113, 117, 254 S.E.
2d 160, 163 (1979): "Presumption is a term which is often loosely
used. It encompasses the modern concept of an inference where
the basic fact . . . is said to be prima facie evidence of the fact to
be inferred. . . . It also encompasses the modern concept of a true
presumption where the presumed fact must be found to exist
unless sufficient evidence of the nonexistence of the basic fact is
produced or unless the presumed fact is itself disproven." This
difference between prima facie evidence (or a prima facie case as
it is often called) and a true presumption is further explained in 2
Stansbury's North Carolina Evidence § 218, 172-73 (Brandis rev.
1973) (hereinafter Stansbury):

> "[A] 'prima facie case' or 'prima facie' evidence means evi-
> dence sufficient to go to the jury in support of a fact to be
> proved. There is nothing compulsory about it; the jury may
> disbelieve the evidence presented, or believe the evidence
> but decline to draw the inferences necessary to a finding of
> the ultimate fact, or believe the evidence and draw the nec-
> essary inferences. In the case of a presumption, however, al-
> though the jury may still disbelieve the evidence and thus
> fail to find the existence of the basic fact, it should be told
> that if it finds the basic fact it must also find the presumed

fact, unless evidence of its nonexistence is produced suffi-
cient to rebut the presumption.

[A] prima facie case and a presumption differ sharply in
their effect upon the burden of producing evidence. A prima
facie case discharges the burden of the proponent, but does
not shift the burden to his adversary. *A presumption,
however, not only discharges the proponent's burden but
also. throws upon the other party the burden of producing
evidence that the presumed fact does not exist.* If no such
evidence is produced, or if the evidence proffered is insuffi-
cient for that purpose, the party against whom the presump-
tion operates will be subject to an adverse ruling by the
judge, directing the jury to find in favor of the presumed fact
if the basic fact is found to have been established." (Em-
phasis added.)

To the extent our case law has discussed the effect of the
presumption that an unexplained, violent death is accidental, it
supports the conclusion that it is a "true" presumption.[2] *Warren
v. Insurance Company* was a suit under a double indemnity clause
of a life insurance policy, which provided for payment of $2500
above the face amount of the policy when the insured's death
resulted from bodily injury caused by "external, violent and ac-
cidental means."[3] No benefits were to be recovered under this
provision if death resulted from bodily injuries "inflicted inten-
tionally by another person." The evidence in the case showed that
deceased was shot by one Willie Tate, who then attempted to
assault deceased's female companion. The issue of contention be-
tween the parties was whether Tate had intentionally shot de-
ceased or had shot him accidentally in the course of an assault on
his companion.

In discussing the effect of the presumption of accidental
death on the allocation of the burdens of persuasion and of going
forward with the evidence, Justice, later Chief Justice, Devin
said, 215 N.C. at 404, 2 S.E. 2d at 18:

---

2. In our most recent case in which this presumption applied, *Barnes v. Insurance Co., supra,* the Court
merely noted that plaintiff had "*at least* made out a prima facie case of accident." 271 N.C. at 220, 155 S.E. 2d
at 495. (Emphasis added.)

3. The *Warren* case came to this Court four times. The opinions in the case may be found at 219 N.C. 368,
13 S.E. 2d 609 (1941); 217 N.C. 705, 9 S.E. 2d 479 (1940); 215 N.C. 402, 2 S.E. 2d 17 (1939); and 212 N.C. 354, 193
S.E. 293 (1937).

---

Moore v. Insurance Co.

---

"There is a distinction, with respect to the burden of proof, between the rule applicable to actions upon ordinary life insurance policies containing exceptions, where proof of policy and death of insured imposes upon the insurer the burden of sustaining the pleaded exception, and the rule applicable where the insurance is against death by accident or accidental means. In the latter case well considered authorities in this and other jurisdictions support the view that where unexplained death by violence is shown, the defendant who seeks to avoid liability on the ground that the death resulted from bodily injuries inflicted intentionally by another person, *has the burden of going forward with evidence* — that is that evidence of death by external violence is sufficient to take the case to the jury — but that the burden of the issue of death by accidental means still remains upon the plaintiff." (Emphasis added.)[4]

In a subsequent opinion in the *Warren* case, Justice, later Chief Justice Barnhill, agreed with the language used earlier and added, 217 N.C. at 706, 9 S.E. 2d at 480:

"[W]here an unexplained death by violence is shown, nothing else appearing, it is presumed that the death resulted from accidental means. When, however, there is evidence tending to explain the cause of death, it becomes a question of fact for the determination of the jury."

When read together, the quoted language from the *Warren* cases makes these points: (1) when plaintiff makes a showing of a violent, unexplained death the burden of going forward with evidence shifts to defendant; (2) if there is no evidence forthcoming to rebut the presumed fact, *i.e.*, that death was accidental, there is no jury question as to it; (3) if, however, evidence is introduced tending to rebut the presumed fact, a jury question is presented; and (4) the burden of persuasion on the issue of accidental death never shifts from plaintiff. This is a classic description of the operation of a "true" presumption. *See* 2 Stansbury, *supra*, § 218, at 173.

---

4. Although the language Justice Devin used is susceptible to both interpretations, we read it to impose the burden of going forward with the evidence *as a result of the effect of the presumption*, not because the insurer must prove an exclusion from coverage if it seeks to avoid liability on that ground. If insurer follows the latter course, it has the burden of persuasion on the issue, not merely the burden of going forward with evidence. *See Slaughter v. Insurance Co.*, 250 N.C. 265, 108 S.E. 2d 438 (1959).

There are, moreover, sound reasons of public policy for presuming accident in doubtful cases and treating this presumption as a true presumption. The presumption has its basis in the common experience of every day life. Men and women generally (although not as constantly as we might wish) conform their conduct to the requirements of law. When the question involved is, as may often be the case, whether death was by accident or suicide, there is in favor of presuming accident "the love of life and the instinct of self-preservation, the fear of death, the fact that self-destruction is contrary to the general conduct of mankind, the immorality of taking one's own life and the presumption of innocence of crime." *Life and Casualty Ins. Co. v. Daniel, supra,* 209 Va. at 335, 163 S.E. 2d at 580. Added to this common sense basis for the presumption is the fact that it serves "a social policy which inclines in case of doubt toward the fruition rather than the frustration of plans for family protection through insurance." McCormick on Evidence § 343 at 811 (2d ed. 1972). And, as Justice Barnhill noted in *Warren v. Insurance Co., supra,* 217 N.C. 705, 9 S.E. 2d 479, perhaps the most important reason for the presumption is to avoid the indulgence of speculation in cases of unexplained, violent death.

[1] In summary, when a plaintiff makes a showing of unexplained, violent death by external means, "which is not wholly inconsistent with accident, the presumption arises that the means were accidental." *Barnes v. Insurance Co., supra,* 271 N.C. at 219, 155 S.E. 2d at 494. The effect of this presumption is to place the burden of going forward with evidence on defendant. If there is no evidence tending to show that death was non-accidental then the jury should be peremptorily instructed that if it finds an unexplained, violent death by external means, it should also find that the death was accidental. If evidence. of non-accidental death is presented, then the presumption *per se* no longer applies, and the question of accidental death is one for the jury. It is, however, still permissible for the jury to infer from the circumstances that the death was accidental, and it is proper for the judge to so instruct. *Jefferson Standard Life Ins. Co. v. Clemmer,* 79 F. 2d 724, 730-31 (4th Cir. 1935). Finally, in no event does the presumption operate to relieve the plaintiff of the burden of persuasion on the issue of accidental death.

[2] In applying these rules · here, the first question we must answer is whether plaintiff's evidence showed an unexplained, violent death by external means not wholly inconsistent with accident. Although this is a close question, we think that it did. Plaintiff's husband was found dead with a gunshot wound to his head and a pistol by his side. The wound was just over the right eye, and it was surrounded by powder burns. There were no signs of a struggle or that anyone else had been around. While this evidence would certainly have supported a verdict of suicide, it is not wholly inconsistent with an accidental discharge of the pistol.[5] Plaintiff was therefore entitled to the benefit of the presumption.

Defendant cites *Slaughter v. Insurance Co., supra,* 250 N.C. 265, 108 S.E. 2d 438, in support of its contention that plaintiff is not entitled to the presumption. *Slaughter* was a suit on a policy insuring against death "resulting directly and independently of all other causes from bodily injury sustained by the insured solely through external, violent and accidental means." *Id.* at 266, 108 S.E. 2d at 439. Excluded from coverage was death caused by the intentional act of the insured or any other person.

Decedent in *Slaughter*, a taxicab driver in Selma, had been seen leaving town to take a passenger to Smithfield. Several hours later, he was found dead in a garbage dump about three miles from Smithfield. He had been shot in the back and above the left ear with a pistol. His money and a pistol he habitually carried were gone. His taxicab was found in Dunn, some 22 miles away. Upon consideration of all this evidence, this Court concluded, *id.* at 269, 108 S.E. 2d at 441:

"In this case the plaintiff's own evidence showed an intentional killing. That showing established lack of coverage. It showed also a bar under the exclusion clause. Either was fatal to plaintiff's cause, requiring nonsuit."

While the decision in *Slaughter* was proper on the second ground stated, it was incorrect to say that plaintiff's evidence showed a lack of coverage. As was said in *Fallins v. Insurance Co.*, 247 N.C. 72, 75, 100 S.E. 2d 214, 217 (1957), "Injuries caused

---

5. *See Dick v. New York Life Ins. Co., supra,* 359 U.S. 437. Decedent in *Dick* was found dead. He had received two wounds from a shotgun, one to his left side and one to his head. The shotgun was lying nearby, with a screwdriver beside it. The United States Supreme Court, applying North Dakota law, held that plaintiff was entitled to the benefit of the presumption of accidental death.

to the insured by the acts of another person, without the consent of the insured, are held due to accidental means unless the injurious acts are provoked and should have been expected by the insured." Plaintiff's evidence in *Slaughter* thus did establish coverage; the reason she was nonsuited was that it also established an exclusion. "[T]he primary basis on which recovery was denied in *Slaughter* was the fact that plaintiff's evidence affirmatively established that the insured's death resulted from bodily injuries inflicted intentionally by another person and therefore by express policy provision was excluded from coverage." *Mills v. Insurance Co.*, 261 N.C. 546, 551, 135 S.E. 2d 586, 589 (1964).

[3] Correctly understood, then, *Slaughter* would require a directed verdict against plaintiff here only if her evidence affirmatively established suicide. Whether plaintiff's evidence here made out the affirmative defense of suicide depends on whether, taking this evidence in the light most favorable to her, "no other reasonable inference or conclusion may be drawn therefrom." *Clark v. Bodycombe*, 289 N.C. 246, 251, 221 S.E. 2d 506, 510 (1976) (discussing whether plaintiff's evidence established affirmative defense of contributory negligence). It is possible to draw reasonable inferences from plaintiff's evidence that her husband died by suicide. These inferences are, however, by no means conclusive. Other reasonable inferences, *e.g.*, accidental discharge of the weapon, may likewise be drawn. The effect of plaintiff's producing evidence from which inferences of suicide could be drawn was only to relieve defendant of the burden of going forward with such evidence in order to avoid a peremptory instruction in favor of plaintiff. It did not require that a verdict be directed against her.[6] *Cf. State v. Patterson*, 297 N.C. 247, 254 S.E. 2d 604 (1979) (in second degree murder case when state presents some evidence that would tend to show absence of malice, defendant has no burden to come forward with evidence in order to avoid mandatory presumption).

Defendant also relies on a number of cases from other jurisdictions in which a verdict was directed against plaintiff on

---

6. Whether plaintiff is entitled to the presumption or, at least, a permissible inference of accident, as well as whether plaintiff has made out an affirmative defense as a matter of law must necessarily be determined at the close of plaintiff's evidence. If at this point plaintiff is at least entitled to the inference and has not made out an affirmative defense, the case must go to the jury under proper instructions notwithstanding the strength of defendant's evidence either against the inference or in support of the defense. Whether defendant insurer would ever because of the strength of its evidence be entitled to a peremptory instruction is a question we need not answer here and leave open for future determination.

facts similar to but not precisely like those here. *Hinds v. John Hancock Mutual Life Ins. Co.*, 155 Me. 349, 155 A. 2d 721 (1959); *Aetna Life Ins. Co. v. Alsobrook*, 175 Ark. 523, 299 S.W. 743 (1927); *Mitchell v. New England Mutual Life Ins. Co.*, 123 F. 2d 246 (4th Cir. 1941); *Gorham v. Mutual Benefit Health and Accident Ass'n.*, 114 F. 2d 97 (4th Cir. 1940); *Despiau v. United States Casualty Co.*, 89 F. 2d 43 (1st Cir. 1937); *Travelers' Ins. Co. v. Wilkes*, 76 F. 2d 701 (5th Cir. 1935). We have carefully examined all these cases. We conclude, as to them, either (1) the facts are sufficiently different from those here to call for a different result, or (2) applying the principles upon which we rely here, we would have reached a different result.

There was here a question for the jury—the weighing of the reasonableness of drawing the inference of accident from a showing of an unexplained, violent death by external means against the inferences of suicide arising from the evidence. It was, therefore, error to direct a verdict against plaintiff.

We have examined the insurance policy in light of plaintiff's contention that it provided $10,000 coverage. While the policy could have been more carefully drawn, we do not see how plaintiff's decedent could reasonably have understood that the principal sum payable in the event of accidental death in the manner described herein was other than $5000.

The decision of the Court of Appeals is

Affirmed.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.

Justice COPELAND dissenting.

No one can dispute that the law regarding presumptions is riddled with confusion. As the majority opinion correctly points out, often a logical inference is loosely termed a "presumption of fact," yet that concept and a "true" presumption, or a "presumption of law," are different in theory and in practical application. This Court has noted that "a presumption of fact used in the sense of an inference is a deduction from the evidence, having its origin in the well recognized relation between certain facts in

evidence and the ultimate question to be proven." *In re Will of Wall*, 223 N.C. 591, 595, 27 S.E. 2d 728, 730 (1943). Such an inference is "to be considered merely as· an evidential fact or a circumstance, rather than as a presumption which would impose a burden [of producing evidence] on the defendant." *Id*. at 595, 275 S.E. 2d at 731. It is clear that we are dealing in this case with a "true" presumption [hereinafter referred to merely as a presumption].

The majority view of presumptions, and the one to which North Carolina subscribes, is the "bursting bubble" theory, which means that "[i]n practical terms, . . . although a presumption is available to permit the party relying upon it to survive a motion for directed verdict *at the close of his case*, it has no other value in the trial." McCormick on Evidence § 345 (2d ed. 1972). (Emphasis added.) Once the presumption has been sufficiently rebutted, it completely disappears from the case. *See generally In re Will of Wall, supra*. Therefore, when the defendant in this case introduced evidence tending to show that the insured's death was not an accident, the trial court was required to rule on its renewed motion for a directed verdict at the close of all the evidence as if the presumption had never existed. "The opponent of the presumption may still not be entitled to a directed verdict, but if his motion is denied, the ruling will have nothing to do with the existence of a presumption." McCormick on Evidence, *supra* at § 345.

The majority opinion apparently gave the plaintiff in this case the benefit of a true presumption, requiring the defendant to come forward with evidence rebutting death by accident, *and* the benefit of a prima facie case, entitling her to get to the jury regardless of the evidence showing death by suicide. This is not the law. In North Carolina a case goes to the jury "unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence *reasonably* tends to establish." *Graham v. North Carolina Butane Gas Co.*, 231 N.C. 680, 683, 58 S.E. 2d 757, 760 (1950). (Emphasis added.) *See also Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1976). Thus, in this situation, a trial court must make a case by case determination to see whether the evidence would support a verdict for the plaintiff. The plaintiff does not get to the jury as a matter of right, and the defendant's evidence that does not con-

flict with that of the plaintiff is to be considered by the court. *See, e.g., Blanton v. Frye,* 272 N.C. 231, 158 S.E. 2d 57 (1967).

Of course there will be cases dealing with this issue in which the facts and circumstances indicate a reasonable possibility that the death of the insured ·*was* an accident. In this situation, as in any other case, the plaintiff would be entitled to have the jury decide the cause of death. In *Gorham v. Mutual Benefit Health & Accident Association of Omaha,* 114 F. 2d 97 (4th Cir. 1940), *cert. denied,* 312 U.S. 688, 85 L.Ed. 1125, 61 S.Ct. 615 (1941), Judge John J. Parker said the following:

> "A suicide case should be tried like any other case, and metaphysical reasoning about presumptions and burden of proof should not be permitted to obscure the real issue, as has been done in so many cases. If the evidence is conflicting, or if different inferences can reasonably be drawn from it, the case is for the jury. If, however, the evidence is so clear as to leave no room to doubt what the fact is, the question is one of law, and it is the right and the duty of the judge to direct a verdict." *Id.* at 100. *See also* Annot., 85 A.L.R. 2d 722 (1962) for other cases dealing with this subject.

The evidence in this case permits only one reasonable, yet unfortunate, conclusion — the cause of the insured's death was suicide. The uncontradicted facts are as follows:

1. The insured had a long history of periods of mental disturbance, which "illness" resulted in him going into "manic" states, for which he had been treated three times in the past. The last treatment occurred a few months before his death on 14 September 1973.

2. When the insured left home to go to Virginia on 14 September 1973, the day of his death, he made a point of telling his wife and daughter that he loved them.

3. The insured was found dead in the early morning of 15 September 1973 in front of his car on a road near his farm in Virginia. A .32 caliber revolver belonging to the insured was found on the ground next to the deceased, which had five unfired shells and one spent shell in the cylinder.

4. There were "heavy" powder burns around the wound, and Dr. Early testified that in his opinion the gun was within two inches of the skull when fired.

5. The insured owned several guns, he usually carried a gun, and his widow testified that he "was proficient with firearms."

6. When he was found, the keys to the insured's car were in the ignition, and his wallet containing $91.00 was in a pocket of his pants.

7. There was no sign of a struggle or that anyone else had been there.

8. Dr. Early estimated the time of death to be 10:00 p.m. on 14 September 1973.

Under these facts, the trial court correctly granted defendant's motion for a directed verdict at the close of all the evidence. For this reason, I respectfully dissent and vote to reverse the decision of the Court of Appeals and to reinstate the judgment of the trial court.