MAXINE V. MOORE, AS EXECUTRIX OF THE ESTATE OF ALLAN PRATT MOORE, AND MAXINE V. MOORE, INDIVIDUALLY v. UNION FIDELITY LIFE INSURANCE COMPANY

No. 7721DC118

(Filed 17 January 1978)

1. **Insurance § 67— death by accident—burden of proof**

   In an action to recover proceeds under a policy insuring against death by accident or accidental means, the burden is upon the plaintiff to show that the insured's death resulted from accident or accidental means within the terms of the policy.

2. **Insurance § 67— death by accident—unexplained violence—prima facie showing of coverage**

   Where the plaintiff beneficiary offers evidence tending to show that the insured met his death by unexplained, external violence, a presumption arises that the death resulted from an accident, thus making out a *prima facie* case of coverage entitling plaintiff to go to the jury; however, if the plaintiff fails to show coverage, or if plaintiff's evidence establishes a defense excluding the death from coverage, a directed verdict against plaintiff is proper.

3. **Insurance § 67.2— death by accident—unexplained death by shooting—sufficiency of evidence for jury**

   Plaintiff's evidence was sufficient to be submitted to the jury in an action on a policy insuring against death by accident where it tended to show that decedent's body was found lying in front of his car on a dirt road in a rural area, there was a bullet hole in decedent's head with powder burns around it, and a gun was lying at decedent's right foot, since the evidence showed an unexplained death by violence and did not establish defendant insurer's defense of death by suicide as a matter of law.

   Judge CLARK dissenting.

APPEAL by plaintiff from *Clifford, Judge.* Judgment entered 15 September 1976 in District Court, FORSYTH County. Heard in the Court of Appeals 30 November 1977.

Plaintiff, both individually and as executrix of her deceased husband's estate, filed complaint seeking to recover under a life insurance policy issued by defendant to the deceased. As executrix, plaintiff sought to recover a return on premiums; as an individual and beneficiary, plaintiff sought to recover the principal sum of $10,000.

Defendant answered, denying liability. Specifically, defendant alleged that the deceased's death resulted from a non-insured

risk, suicide, and that if it were liable for any amount, plaintiff was only due $5,000.

Plaintiff testified that her husband had retired from Hennis Freight Lines because of a heart condition, but had "a good income" from his disability payments and had no financial worries. The deceased would sometimes get "keyed up and get a flight of ideas like he could make money"; and when he got like this, he would buy and sell and trade for days without rest. He had been hospitalized in 1953 and 1969, and again in 1973 shortly before his death. On Friday (14 September 1973), the deceased left home to go to a farm which they owned in Virginia to make arrangements for an auction sale. His death was reported to plaintiff the next day. Plaintiff also testified that her husband owned several guns and "usually always had a gun."

Joe Dalton testified that he was squirrel hunting on the morning of 15 September 1973 and found the deceased's body lying in front of his car on a dirt road which led to deceased's farm. There was a bullet hole in deceased's head and a gun lying at deceased's right foot. Dalton testified that "there was no sign that anybody else had been around there." Jack Dickson, the deceased's son-in-law, testified that "the only way that you could tell that [deceased] was ill, if you put it that way, he just wanted to buy everything he saw" and that deceased seemed calm and normal after his 1973 hospitalization. Finally, deceased's daughter Cathy Norris testified, as had the other witnesses, that the deceased was never depressed, that he was a jolly man, and that he would sometimes get "wound up like and he liked to buy and sell things, and trade things."

At the close of plaintiff's evidence, the judge reserved ruling on defendant's motion for a directed verdict. The judge also ruled that the principal sum payable under the policy was $5,000, not $10,000 as claimed by plaintiff.

Defendant presented the Sheriff, medical examiner, and a local resident, all of whom described the scene of deceased's death. Their testimony tended to show that deceased's automobile was found pulled off to the side of a road, that the keys were in the ignition, that no other automobile tracks led to the scene, that there was no disturbance at the scene and defendant's clothing had not been disturbed, that deceased's wallet was in his pocket

and contained $91, that there was a gun shot wound and a "very strong powder burn" over deceased's right eye, that a .32 caliber pistol with one spent shell was lying next to deceased's right foot, and that the time of death was estimated at 10:00 p.m. on the night of 14 September.

At the close of defendant's evidence, the judge allowed defendant's motion for a directed verdict and judgment was entered dismissing plaintiff's action.

*Thomas J. Keith, for the plaintiff.*

*Hudson, Petree, Stockton, Stockton & Robinson, by James H. Kelly, Jr. and Grover Gray Wilson, for the defendant.*

MARTIN, Judge.

[1, 2]　At the outset, we recognize and adhere to the general rule that in an action to recover proceeds under a policy insuring against death by accident or accidental means, the burden is upon the plaintiff to show that the insured's death resulted from accident or accidental means within the terms of the policy. *Barnes v. Insurance Co.*, 271 N.C. 217, 155 S.E. 2d 492 (1967); *Warren v. Insurance Co.*, 215 N.C. 402, 2 S.E. 2d 17 (1939). It is also well settled law in this jurisdiction that where the plaintiff beneficiary offers evidence tending to show that insured met his death by *unexplained*, external violence, a presumption arises that the death resulted from accident—thus, making out a *prima facie* case of coverage entitling plaintiff to go to the jury. *Barnes v. Insurance Co., supra*; 2 Stansbury's N.C. Evidence § 224 (Brandis Rev. 1973); *cf. Slaughter v. Insurance Co.*, 250 N.C. 265, 108 S.E. 2d 438 (1959). However, if the plaintiff fails to show coverage, or if plaintiff's evidence makes out a case of coverage and at the same time establishes a defense excluding the death from coverage, a directed verdict against plaintiff is proper. *Slaughter v. Insurance Co., supra*.

[3]　The question before this Court is whether, in light of the principles stated above, the trial court's allowance of defendant's motion for directed verdict was proper. We are of the opinion that it was not.

In support of the judgment entered in its favor, defendant relies on the *Slaughter* case where the driver of a taxicab was found, shot to death, 22 miles from his cab with his money and

pistol missing. Notwithstanding the evidence clearly established death by external and violent means, the Court affirmed a nonsuit for the defendant insurance company holding that plaintiff's own evidence showed an intentional, not an accidental killing and thus, not only showed a lack of coverage, but also established a defense to coverage — murder. Regarding the plaintiff's evidence in the *Slaughter* case, the Court said, "*All* the evidence points to an intentional killing with robbery as the motive. This evidence . . . *leaves no basis* for a finding of death as the result of accident as the term 'accident' is generally understood." (Emphasis added.)

Viewing plaintiff's evidence in the instant case, we cannot say that the *only* reasonable inference to be drawn therefrom establishes defendant's defense of suicide as a matter of law. Unlike the strong evidence in the *Slaughter* case, the evidence in the instant case neither establishes nor suggests an explanation for the insured's death. We do not know why the gun discharged in proximity to the deceased's head while he was in front of his car on a dirt road — the explanation could be suicide; but certainly the fact that the gun discharged at close range does not exclude the possibility of accident. *See Barnes v. Insurance Co., supra.* Accordingly, plaintiff's showing of unexplained death by violence is sufficient to take the case to the jury where the burden of the issue of death by accidental means remains upon the plaintiff. *Barnes v. Insurance Co., supra; Warren v. Insurance Co., supra.*

The trial court also held that the insurance policy together with the application was not ambiguous, and that the amount in controversy in addition to the refund, was $5,000. From our careful examination of the policy, application and riders, we find the trial court was correct in this holding.

Affirmed in part; reversed in part.

Chief Judge BROCK concurs in the result.

Judge CLARK dissents.

Judge CLARK dissenting.

Assuming that the presumption against suicide, plus any suppositious evidence considered in the light most favorable to the

plaintiff, was sufficient to take the case to the jury, in my opinion other evidence offered by the plaintiff negates the presumption and any evidence favorable to her case and establishes the defense of suicide.

Plaintiff's evidence tended to show that deceased insured had several guns and was proficient with firearms. He usually had a gun with him. He was found in a wooded area, a bullet hole in his forehead, lying in front of his car, a gun lying at his right foot. Powder burns were around the bullet hole. It had rained; there was grass in the area; and there was no sign that anyone else had been around there. His wallet, with money in it, was in his pocket. He had a history of mental illness, resulting in treatment at a mental institution, the last for a period of 50 days about. He was on medication, lithium and "coumadin."

Plaintiff's evidence failed to show coverage within the policy.